UNITED STATES *v.* COY and others.

*(District Court, D. Indiana. July 7, 1887.)*[1]

ELECTIONS—OFFENSES AGAINST ELECTION LAWS—REV. ST. U. S. § 5515.
    Rev. St. Ind. 1881. §§ 4712, 4713, require that an inspector of elections, who receives the certificate, tally-sheet, and poll-list of an election, shall safely keep them in his custody until they are delivered to the board of canvassers. *Held* that, at an election in which a representative in congress was voted for, the violation of the duty of keeping such papers safely was an offense against the general government, under Rev. St. U. S. § 5515, providing for the punishment of officers of an election at which a representative in congress is voted for, who neglect or refuse to perform any duty in regard to such election required of them by any law of the United States, or of any state; and under Rev. St. U. S. §§ 5511, 5512, and 5520, any one aiding, abetting, or conspiring to effect such violation is equally guilty with the principal.

Motion by Each Defendant Severally to Quash Indictment for conspiracy to violate federal election laws.

*Mr. Bynum,* for defendant Beck.

*Abram Hendricks,* and *O. B. Hord,* for defendant Perkins.

*Henry Spaan, pro se.*

---

[1] The publication of this case was inadvertently omitted at the time of its decision. For the opinion of the circuit court on an application for writ of *habeas corpus* by the defendant Coy, see 31 Fed. Rep. 794.

*C. F. McNutt, Livingston Howland,* and *Cas. Byfield,* for other defendants.

WOODS, J. The objections made to the several counts of the indictment not being different, it is enough to set out the first count, which is as follows:

"UNITED STATES OF AMERICA, DISTRICT OF INDIANA—SS.:

"*In the District Court of the United States for the District of Indiana.*

"May Term, 1887, at Indianapolis.

"The grand jurors of the United States within and for the District of Indiana, impaneled, sworn, and charged in said court, at the term aforesaid, to inquire for the United States, within and for the district of Indiana aforesaid, upon their oath present that Samuel E. Perkins, Simeon Coy, Henry Spaan, John H. Councilman, Charles N. Metcalf, John E. Sullivan, Albert T. Beck, George W. Budd, Stephen Matler, William F. A. Bernhamer, and John L. Reardon, late of said district, at the district aforesaid, on the fourth day of November, in the year of our Lord 1886, unlawfully, knowingly, and feloniously did then and there conspire, confederate, combine, and agree together, between and among themselves, to commit an offense against the United States, and did then and there unlawfully, knowingly, and feloniously then and there conspire, combine, confederate, and agree together, between and among themselves, to induce, aid, counsel, procure, and advise one Allen Hisey to unlawfully neglect, and omit to perform, a duty required and imposed by the laws of the state of Indiana, relating to and affecting a certain election had and held at and in the county of Marion, in the state and district of Indiana, and at the Second precinct of the Thirteenth ward of the city of Indianapolis, in the county of Marion aforesaid, on the second day of November, in the year of our Lord 1886, pursuant to law, at which election a representative in congress for the Seventh congressional district of Indiana was voted for, to-wit, to unlawfully neglect and omit to safely keep in his possession and custody the tally papers, poll-lists, and certificate of said election at said precinct,—he, the said Allen Hisey, being then and there an officer of said election, to-wit, an inspector of said election at the Second precinct of the Thirteenth ward of the city of Indianapolis aforesaid, having been thereto duly appointed, and having duly qualified under the laws of the state of Indiana, and acting as such inspector; and that, to effect the object of said conspiracy, the said Samuel E. Perkins, then and there, after one of the tally papers and one of the poll-lists of said election at said precinct, and the certificate of the number of votes each person had received at said election at said precinct, designating the office, signed by the board of judges of said election at said precinct, had been deposited with him, the said Allen Hisey, as inspector as aforesaid, and after he, the said Allen Hisey, had received the said tally papers, poll-list, and certificate aforesaid, for the purpose of returning the same to the board of canvassers of said election for the county of Marion, aforesaid, he, the said Samuel E. Perkins, did then and there, by unlawfully and feloniously counseling and advising him, the said Allen Hisey so to do, and by other unlawful means, to the grand jurors aforesaid unknown, unlawfully used to effect the same unlawful purpose, unlawfully induce and procure him, the said Allen Hisey, to unlawfully omit and neglect to safely keep said tally paper, poll-list, and certificate in the possession of him, the said Allen Hisey, as inspector as aforesaid, to surrender and deliver to and into the possession of the said Samuel E. Perkins, and permit him, the said Samuel E. Perkins, to take and have the possession and custody of said tally paper, poll-list, and certifi-

cate, and the said tally paper, to then and there unlawfully mutilate, alter, forge, and change before the said tally paper, poll-list, and certificate had been returned to and canvassed and estimated by the board of canvassers of the said election of the county of Marion aforesaid; he, the said Samuel E. Perkins, not being then and there an officer of said election, and not then and there being a person authorized by the laws of the state of Indiana to have possession and custody of said tally paper, poll-list, and certificate aforesaid; contrary to the form of the statute of the United States, and against the peace and dignity of the United States of America."

I do not deem it necessary to restate here, or to consider separately, the positions and arguments of counsel, but, in connection with the federal and state statutes on which it is predicated, will present the considerations upon which, I think, the indictment must be upheld.

The Revised Statutes of Indiana (1881) provide for two sets of returns of elections from each voting place,—one set consisting of the ballots cast, one of the lists of voters, and one of the tally papers, which together are to be sealed in a strong paper envelope or bag, and in that condition to be delivered to the clerk for preservation, (Rev. St. §§ 4713, 4714;) the other set consisting also of one of the lists of voters, and one of the tally papers, and, besides, a certificate under the hands of the judges composing the board of judges. The frauds in question, as shown by the charge, were confined to returns and papers of the second class, in respect to which the statutory requirements are contained in sections 4712 and 4715 of the Revision.

By section 4712, "when the votes at any precinct shall be counted, the board of judges shall make out a certificate under their hands, stating the number of votes each person has received, and designating the office; * * * and such certificate, together with one of the lists of voters and one of the tally papers, shall be deposited with the inspector, or with one of the judges selected by the board of judges."

And by section 4715, "the inspectors of each township or precinct, or the judges of election to whom the certificate, poll-books, and tally papers shall have been delivered, * * * shall constitute a board of canvassers, who shall canvass and estimate the certificates, poll-lists, and tally papers returned by each member of said board; for which purpose they shall assemble at the court-house on the Thursday next succeeding such election;" and by section 4717, "after compilation of the canvass, the canvass-sheet, together with such certificates, poll-books, and tally papers, shall be delivered to the clerk, and by him filed in his office."

It is therefore a duty, partly implied and partly expressed, "imposed by law," upon these inspectors and judges, safely to preserve the papers "deposited" with them, and to "return" the same intact, to the board of canvassers, and equally the duty of the board,—of its members and officers,—after completion of its work, to deliver the papers unharmed to the clerk, to be filed in his office.

The duty thus imposed is recognized and emphasized by penal section 2187 of the Revision, which reads in this wise:

"Any township trustee or inspector, or any person acting for or on behalf of any trustee or inspector while forming a board of canvassers, or before the

canvassing of any board of canvassers, or after the adjournment of any board of canvassers who shall, with intent to cheat and defraud, alter any election return as made by the election board of any voting precinct, either by increasing the vote of any candidate, or reducing the same, or shall intentionally destroy, misplace, or lose any poll-book or tally-sheet, * * * shall be fined," etc.

The federal statute goes further, and, for every detail of duty imposed by state or federal enactment upon the officers of an election at which a representative in congress is voted for, provides a sanction which, if so enforced as to command respect, will suppress the beginnings of evil and wrong-doing in respect to the returns of such elections. Congress has declared to be an offense against the United States every omission or breach, by any officer of election, of any duty imposed by law, either of the state or of the United States, if the omission or breach be one affecting, either actually or potentially, the congressional election. Thus, by section 5515, Rev. St. U. S., every officer of an election at which any representative in congress is voted for, whether appointed under authority of the United States or of any state, "who neglects or refuses to perform any duty in regard to such election required of him by any law of the United States, or of any state, * * * or who violates any duty so imposed," is declared punishable; and, by section 5511, "if any person * * * interferes in any manner with any officer of such election in the discharge of his duties, or by force, threat, intimidation, bribery, reward, or offer thereof, * * * or other unlawful means, induces any officer of an election, or officer whose duty it is to ascertain, announce, or declare the result of any such election, or give or make any certificate, document, or evidence in relation thereto, to violate or refuse to comply with his duty, or any law regulating the same; * * *" or, by section 5512, "if any such officer or other person, who has a duty to perform in relation to such election, * * * knowingly neglects or refuses to perform any duty required by law, or violates any duty imposed by law relating to or affecting such election, or the result thereof, or [affecting] any certificate, document, or evidence in relation thereto, or if any person aids, counsels, procures, or advises any such voter, person, or officer to do any act which is hereby made a crime, or to omit any act the omission of which is hereby made a crime,—every such person is hereby made punishable," etc. By section 5520, "if two or more persons conspire to commit any offense against the United States, * * * and one or more of such parties do any act to effect the object of such conspiracy, all shall be liable to a penalty." That is to say, there are involved here three kinds of offenses and three classes of offenders. The inspector or judge of election may be punished for his neglect or disregard of duty; any who counseled, aided, or procured such neglect or omission of duty by the officer may be indicted for so doing; and those who did not directly aid, counsel, or procure such omission or neglect of duty, but were parties to a conspiracy to effect such omission or neglect, may be indicted for such conspiracy.

Counsel say that there can be "no crime by implication," and, in a sense,

this may be true; but the proposition has little or no application here. According to the explicit terms of the federal statute, any omission, neglect, or violation of "any duty required by law," or "imposed by law," affecting the congressional election or any certificate, document, or evidence in relation thereto, is made a crime; and this, on reason and authority, includes duties deduced by clear implication or inference from the terms of a statute, as well as those expressly and directly declared. Indictments for violation of implied duties were upheld in the following cases, which will be found to support quite fully the views here expressed: *U. S.* v. *Jackson*, 25 Fed. Rep. 548, and cases cited; *U. S.* v. *Caruthers*, 15 Fed. Rep. 309; *U. S.* v. *Baldridge*, 11 Fed. Rep. 552.

That congress had constitutional power to enact these statutes was fully determined by the supreme court in the well-considered cases, *Ex parte Siebold* and *Ex parte Clarke*, 100 U. S. 371, 404. Upon its facts, as well as in respect to the law, the *Case of Clarke* is quite in point here. In order to ascertain the facts upon which the indictment was founded, and to demonstrate more certainly, if possible, the scope of the decision in that case, I have procured, and have before me, a copy of the indictment against Clarke, and also a statement by the United States district attorney, who conducted the prosecution, together with a letter from the present district judge, which show that the facts and circumstances of Clarke's offense were almost identical with the facts charged and known to exist here, and that the questions of law and statutory construction involved were not different. The district attorney says:

"The defendant (Clarke) was a judge at a congressional election, and one of the poll-books including the return, having been sealed up by the judges and directed to the clerk of court, was intrusted to him for delivery to the clerk. He was convicted of neglecting his duty as judge—*First*, in failing to convey the poll-book thus sealed to the clerk; *second*, in permitting the same to be opened while in his custody. It was shown at the trial that the poll-book in question, after being put under cover and sealed, was intrusted to him, as one of the judges, for delivery to the clerk, and that before he delivered it the sealed package had been opened and the return altered. There was originally a third count, charging him with permitting the return to be altered, with the intent to affect the result of the election; but, as the vote for congressman was not changed, this charge was abandoned, and the count *nolled* before trial. As the case was actually tried, the alteration of the poll-book was merely an item of evidence to show that the package had been opened while in his custody, thus avoiding all question as to the relation of the fraud to the congressional election. The return for congressman being in the same package, his neglect to deliver the same unopened was clearly within the scope of the act of congress."

The judge's letter contains the further significant statement, made on the authority of the district attorney, that "the evidence did not make it clear that Clarke opened the package, * * * but that he did permit another person to take it to a room in the Dabolt Exchange, where it was opened, and the returns tampered with, Clarke not knowing or caring to know who did it."

The supreme court, after reciting the substance of the indictment as charging simply unlawful neglect and violation of duty in respect to the

custody and return of the papers to the clerk, without alleging any unlawful intent on the part of the defendant, used this language:

"It is conceded that this indictment was found under section 5515 of the Revised Statutes of the United States. * * * The case was argued at the same time with *Ex parte Siebold,* 100 U. S. 371, and most of the questions involved have been considered in that case. * * * As to the merits of the case, there can be no serious question that the indictment charges an offense specified in the act of congress. Rev. St. § 5515. * * * The principal question is whether congress had constitutional power to enact a law for punishing a state officer of election for the violation of his duty under a state statute in reference to an election of a representative to congress. As this question has been fully considered in the previous case, it is unnecessary to add anything further on the subject. Our opinion is that congress had constitutional power to enact the law, and that the cause of commitment was lawful and sufficient."

The proposition that this indictment rests on ground inconsistent with the decision of the circuit court of this district in *Ex parte Perkins,* 29 Fed. Rep. 900, is plainly untenable. On the contrary, the reasoning of that case, in manifest harmony with the decision of the supreme court in *Clarke's Case,* both suggests and supports the distinction on which the present indictment is founded, as is shown by the following extracts from the opinion:

"The jurisdiction of the federal courts in the enforcement of these statutes depends altogether on something having been done or omitted which has affected, or might affect, the result of an election for a representative in congress. The facts stated in the affidavit, in connection with the admissions of counsel in the course of the argument, show that the result of the election was not affected, unless it was by the mutilation of the tally papers, solely and exclusively in the statements of the vote for coroner and criminal judge. It is not pretended that the tally papers were mutilated, changed, or forged in any other respect, or that any of the tally papers, poll-books, or ballots were removed from their proper place of custody. The alleged offense against the United States consists wholly of the alterations of the statements of the votes for coroner and criminal judge, as contained in the tally papers. * * * These specific facts, stated in the affidavit, which were admitted in the argument to be all the facts in the case, do not constitute an offense against the United States, and the commissioner was therefore without jurisdiction to conduct the examination."

These propositions seem to have been stated with studied care to prevent misconstruction, and to limit the decision to the particular ground stated. While, therefore, that opinion establishes for this court the rule that the mere alteration of the returns of an election in respect to local candidates or offices only, notwithstanding the returns of the congressional election be contained in the same papers, if the alteration be accomplished without disturbing the custody of the documents and without putting the genuineness and truth of the papers in respect to the congressional election in question or doubt, will not be deemed to affect that election, and therefore will not be cognizable as a federal offense, this is the full length to which the decision goes, and it remains unquestioned that an omission or disregard of duty in respect to the custody of such returns by an officer, to whom the custody is by law intrusted, does affect the

election in respect to congressmen, as well as in respect to local contests; and, therefore, within both the letter and spirit of the national statutes, does constitute a crime against the United States, by the officer, and by all who, acting separately or in conspiracy, induce or procure him to neglect or disregard such duty. Motion overruled.